THE CONSOLIDATED COAL COMPANY OF ST. LOUIS

v.

JOSHUA S. PEERS et al.

*Filed at Mt. Vernon November 11, 1896—Rehearing denied May 5, 1897.*

1. PLEADING—*presumptions must be taken against the pleader.* Presumptions and intendments arising from the language used in a pleading are taken against the pleader.

2. SAME—*defect in plea for substance or form can only be reached by demurrer.* Where a plea is insufficient in substance or form the proper method of taking advantage thereof is by demurrer, and not by motion to strike from the files.

3. PRACTICE—*motion to strike plea from the files is proper when immaterial issue is actually formed.* It is only when an immaterial issue has in fact been formed that the pleading tendering such issue will be stricken from the files on motion and a repleader awarded or judgment by *nil dicit* rendered.

4. LANDLORD AND TENANT—*lessee bound to performance of covenants by privity of contract and of estate.* A lessee is bound to the performance of express covenants which run with the land both by privity of contract and privity of estate, the privity of .contract continuing to the end of the term while the privity of estate terminates by assignment of the lease.

5. SAME—*assignee bound to performance of covenants by privity of estate.* An assignee of a lease is bound to a performance of the express covenants which run with the land by reason of his privity of estate, and in the absence of express contract he is liable only for breaches of the same which occur while such privity continues.

6. SAME—*what words do not create privity of contract.* The words "subject to the agreements" in the lease, used by a lessee in assigning his lease, do not impose upon the assignee a contractual obligation to remain liable for rent to the end of the term, regardless of his right to terminate his privity of estate by assignment.

7. SAME—*as between the lessee and his assignee, covenants in a lease are not incumbrances.* The agreement in a lease to pay rent is part of the estate itself, and nothing which constitutes a part of an estate, or which, as between the parties, can be regarded as an incident thereto, can be deemed an incumbrance.

8. RES JUDICATA—*when question of res judicata is not presented in the record.* An objection that the question involved in an appeal is *res judicata* is not presented in the record where there is no allegation to that effect in the pleadings.

PHILLIPS, J., dissenting.

*Consolidated Coal Co.* v. *Peers*, 59 Ill. App. 595, reversed.

APPEAL from the Appellate Court for the Fourth District;—heard in that court on appeal from the Circuit Court of Madison county; the Hon. BENJAMIN R. BURROUGHS, Judge, presiding.

This suit originated in the Madison circuit court. The declaration is in assumpsit, and charges, in substance, that on December 17, 1870, Joshua S. Peers and others, the plaintiffs, (appellees here,) were the owners of coal underlying certain described lands, and by a lease in writing and under seal leased to the Abbey Coal and Mining Company, for the term of twenty-five years, the sole and exclusive right of mining and operating in coal on said lands, in consideration whereof the lessee, said Abbey Coal and Mining Company, agreed, among other stated things, to pay appellees a minimum rent of $1200 a year; that said Abbey company sunk a shaft and operated a mine until August 11, 1886, when, by its deed of that date, it granted, bargained, sold, assigned, transferred and set over to the Consolidated Coal Company of St. Louis, defendant, the coal underlying said tracts of land, together with all the rights, privileges and appurtenances thereunto appertaining or belonging, as the same were assured by the said lease, and subject to the agreements therein mentioned to be performed by said lessee, and thereby covenanted and agreed to and with the defendant that it was seized of a perfect title to the property thereby conveyed, and that the same was free from all other and prior incumbrances except those above specifically mentioned, and that it would warrant and defend the same to the defendant and to its successors; that the defendant took possession of the property by said deed conveyed to it, and from thence until the commencement of this suit has had the use, control and enjoyment thereof without molestation, interference or hindrance on the part of the plaintiffs, and during that time, to-wit, from the 20th day of September, 1891, until the 20th day of September,

1894, there accrued to them, under and by virtue of the provisions of said lease, for and on account of royalty guaranteed, the sum of $3600, which has not been paid. The declaration then avers, in substance, that by means whereof the defendant has become liable to pay to the plaintiffs the said sum of $3600, according to the terms and effect of the provisions of said lease and of said deed, and being so liable, etc., undertook and promised, etc.

To this declaration the following plea was filed: "And now comes the said defendant, by Charles W. Thomas, its attorney, and for a plea in this behalf says *actio non*, because it says that on the 28th day of November, 1887, it, the said defendant, by its instrument in writing of that date, under its corporate seal, did assign and set over to one Jacob Lasurs, of said county, the lease in the declaration mentioned as having been made and executed by plaintiffs, and all the leasehold interest and estate thereby conveyed, and did put the said Lasurs into possession of the mine and premises in said lease described, by virtue whereof said Lasurs became, and since said time hath been, the sole lessee of said mine and premises under said lease: without this, that the defendant has had the use, control and enjoyment of said mine and premises from, to-wit, the 20th day of September, 1891, to the 20th day of September, 1894, as is by the said declaration supposed; and this the defendant is ready to verify, wherefore," etc.

Thereupon the plaintiffs moved the court to strike said plea from the files "for the following reasons, to-wit: because said plea does not answer the declaration, and presents an immaterial issue." The court allowed said motion and ordered that the plea be stricken from the files, and rendered judgment by *nil dicit* for want of a plea, and had the plaintiff's damages assessed by a jury, and rendered final judgment for the $3600 damages so assessed. To these several actions and proceedings of the court, and to the rendition of judgment, the defendant excepted. Upon an appeal to the Appellate Court

the judgment was affirmed.    This further appeal was then taken.

CHARLES W. THOMAS, for appellant:

An assignee may always discharge himself from liability for subsequent breaches, both as regards rent and other covenants, by assigning over, although done for the purpose of getting rid of his responsibility, and although the second assignee neither takes possession nor receives the lease.    Taylor on Landlord and Tenant, sec. 452.

The assignee may discharge himself from all liability for subsequent breaches by assigning over to another person, even though the assignment be made for the express purpose of avoiding his responsibility, and a premium be given as an inducement to accept the transfer. *Johnson* v. *Sherman*, 15 Cal. 287; *Johnston* v. *Bates*, 16 J. & S. 180; *Tate* v. *McCormick*, 23 Hun, 218.

The expression "subject to incumbrances," or "subject to agreements," does not amount to a covenant on the part of the grantee.    *Fowler* v. *Fay*, 62 Ill. 375; *Hammer* v. *Johnson*, 44 id. 193; *Barker* v. *Bank*, 80 id. 96.

Nothing which constitutes part of the estate, or is to be regarded as an incident to which the estate is subject, can be deemed an incumbrance.    Devlin on Deeds, sec. 906.

JNO. G. IRWIN, and WILLIAM H. KROME, for appellees:

A motion to strike from the files is the right way to get rid of an immaterial issue.    *Burlingame* v. *Turner*, 1 Scam. 589; *Hitchcock* v. *Haight*, 2 Gilm. 604; *McClure* v. *Williams*, 65 Ill. 393.

The law requires no set form of words to create a covenant.    It is enough if the language of a sealed instrument is such as to show that the parties thereto have assented to the performance or forbearance of a future act.    12 Am. & Eng. Ency. of Law, 1001, note 13.

Contracts are to be expounded so as to carry into effect the intention of the parties appearing on the face

of the whole instrument,—not from particular expressions, but according to the reasonable construction of the words. *Watchmann* v. *Crook*, 5 G. & J. 239; *Davis* v. *Lyman*, 6 Conn. 249; *Wilson* v. *Marlow*, 66 Ill. 385.

Particular clauses are subordinate to the general intent. *Decker* v. *Furniss*, 14 N. Y. 615.

Express covenants may be created by words which at first view might appear to operate rather as conditions, qualifications or defeasances of covenants. *Campbell* v. *Shrum*, 3 Watts, 63.

Mr. JUSTICE BAKER delivered the opinion of the court:

There are some circumstances under which the court may properly strike a plea from the files,—and this even when it presents a good defense to the action; and therefore, when the record does not show upon what ground the action of the court was based, it will be presumed, in favor of the ruling of the court, that sufficient cause to justify its action was made to appear. (*Funning* v. *Russell*, 81 Ill. 398.) Here, however, the motion and the proceedings had thereon are preserved in a bill of exceptions, and it is thereby shown that the plea was stricken from the files and judgment by *nil dicit* rendered, because, in the opinion of the circuit court, said plea does not answer the declaration and presents an immaterial issue. It has been held by this court in several cases that if a plea is insufficient in substance or form the only mode of taking advantage of the defect is by demurrer, and that it is improper to strike the plea from the files. (*Orne* v. *Cook*, 31 Ill. 238; *Johnson* v. *Freeport and Mississippi River Railway Co.* 111 id. 413.) To substitute a motion to strike a pleading from the files in place of a demurrer to such pleading is to abrogate the rules of the common law pertaining to pleading and practice, and to introduce a new and dangerous rule of procedure, and one that would tend to deprive parties litigant of the statutory right of amendment.

*Hitchcock* v. *Haight*, 2 Gilm. 604, *McClure* v. *Williams*, 65 Ill. 390, and *Burlingame* v. *Turner*, 1 Scam. 588, cited by appellees, have reference only to cases where immaterial issues have in fact been formed,—not to a case where issue of fact has not been joined upon the pleading which is supposed to be immaterial. In a case such as that last mentioned, a demurrer is the proper tool to work with, whereas after immaterial issues have been formed there is no place for a demurrer, and such issues may be stricken from the files and a repleader awarded or judgment by *nil dicit* rendered, or, if after verdict and in a very clear case, judgment *non obstante veredicto* given.

The matter of the appeal herein has been discussed before us just as if a demurrer had been interposed to the plea, and sustained. Since this is so, and since the court below decided the case upon that theory, we deem it advisable to overlook the mere error of practice indicated, and dispose of the appeal upon the footing on which counsel have submitted it.

The declaration alleges the leasing of the premises to the Abbey Coal and Mining Company for the term of twenty-five years, and the covenant of that company to pay an annual royalty of at least $1200; the entry of that company on the demised premises; the opening of the mine thereon, and the operation of the same by it until August 11, 1886; the assignment by it, at that date, by deed, of the lease and demised property to appellant, and that appellant "thereupon took possession of the property by said deed conveyed to it, and from thence until the commencement of this suit has had the use, control and enjoyment thereof," etc., and that during that time there accrued to appellees, under and by virtue of the provisions of the lease, guaranteed royalties from September 20, 1891, until September 20, 1894, amounting to $3600, which have not been paid. Where there are express covenants in a lease which run with the land, such as to pay rent, the lessee is bound to their perform-

ance by reason of his being both in privity of contract and privity of estate with the lessor, and the privity of contract continues to the end of the term, but by an assignment of the term he terminates the privity of estate. Between the lessor and the assignee of the term there is privity of estate, and by reason of such privity the assignee is liable for breaches of any express covenant of the lease which runs with the land or term and which occur while such privity continues to exist. Tested by these well settled rules, the declaration states a good cause of action against appellant for the rents or royalties for which suit is brought.

If we assume that the only valid cause of action against appellant that is set up in the declaration is that which we have mentioned, and which has for its basis privity of estate, then it necessarily follows that the plea that was interposed by appellant is not justly subject to the charges brought against it, of not answering the declaration and of presenting an immaterial issue, but that, on the contrary, it presents a complete legal defense to the suit. The plea impliedly admits the making of the lease wherein appellees were lessors and the Abbey Coal and Mining Company the lessee; the covenant of the said lessee to pay the stated rents or royalties; the assignment by said lessee, by its deed of August 11, 1886, of the lease and demised premises to it, the defendant, and that it thereupon took possession of the mine and property, and pleads, by way of defense to the action, that it, the defendant, on November 28, 1887, by its instrument in writing of that date, under its corporate seal, did assign and set over to one Jacob Lasurs the lease and all the leasehold interest and estate, and did put said Lasurs into possession of the mine and premises described in the lease, and concludes by traversing the fact alleged in the declaration, that it, the defendant, had the use, control and enjoyment of the premises from September 20, 1891, to September 20, 1894. The rule is, that as the liability

of the assignee grows out of privity of estate, and that only, it ceases when that privity ceases to exist, and each successive assignee is liable for only such breaches of covenant as occur while there is privity of estate between him and the lessor. *Sexton* v. *Chicago Storage Co.* 129 Ill. 318; *Washington Nat. Gas Co.* v. *Johnson,* 123 Pa. St. 576; Taylor on Landlord and Tenant, sec. 452; Wood on Landlord and Tenant, secs. 307, 339, 340, 349.

It is claimed by appellees in their brief that the question at issue in this cause was adjudicated in some former litigation between the parties to this suit, and that the matter here at issue is *res judicata.* There are no allegations in the declaration showing a former adjudication in respect to the questions or matters submitted in this suit for the decision of the court, nor is there any replication of *res judicata,* and so the necessary conclusion must be that no question of *res judicata* is raised by the record.

The principal reliance, however, of appellees is the claim that the provisions in the deed made on August 11, 1886, by the Abbey company, lessee, to the defendant, assigning the lease and leasehold property to appellant, amount to a covenant on the part of appellant to pay the accruing rents or royalties for the residue of the term to the lessor in the assigned lease,—in other words, that such provisions show a privity of contract between appellees and appellant. If this contention is well grounded, then, of course, appellant did not shake off this contractual liability by making an assignment to Lasurs. Such latter assignment, while it would destroy the privity of estate, could not have the effect of obliterating the privity of contract as between appellees and appellant. The material question then is, does the declaration show an express contract on the part of appellant to pay rent for the entire unexpired portion of the term created by the lease?

The declaration states that "the said Abbey Coal and Mining Company granted, bargained, sold, assigned,

transferred and set over to the defendant the coal under-lying said tracts of land, together with all the rights, privileges and appurtenances thereunto appertaining or belonging, as the same were conveyed by said lease, and subject to the agreements therein mentioned to be per-formed by said lessee." The words principally relied on as showing a covenant on the part of appellant are these: "subject to the agreements therein mentioned to be per-formed by said lessee." The expression, "to be performed by said lessee," does not refer to appellant. The Abbey Coal and Mining Company is the only "lessee" mentioned in the declaration or in the deed set forth therein. Said company is manifestly the "lessee" designated. The words "to be performed by said lessee," then, are merely de-scriptive of the agreements, intended to be pointed out by the deed, and the whole clause relied on simply means, "subject to the agreements of the lessee mentioned in the lease." Do the words "subject to the agreements in the lease" impose a personal contractual obligation on the as-signee? How stand the authorities upon that question?

*Wolveridge* v. *Steward,* 3 Moore & Scott, 561, (30 E. C. L. 312,) was an action of covenant by the lessee and assignor for non-performance of the covenants in the original lease on the part of the lessee and his assigns to be performed, and which, it was contended on the part of the plaintiff, the defendant, according to the legal effect of the assign-ment from the plaintiff to him, covenanted to perform. The assignment was by an indenture executed by both parties, and was made "subject to the payment of rent and performance of the covenants and agreements reserved and contained in the original lease." The defendant took possession and occupied the premises under this assign-ment, and before the expiration of the term assigned to a third person. After this second assignment the lessee was compelled to pay to the lessor rent which the second assignee had suffered to be in arrear, and in the said action of covenant prosecuted by the lessee against his

immediate assignee it was held in the Exchequer Chamber, on error, Lord Chief Justice DENMAN delivering the opinion, that the immediate assignee was not liable in covenant to the lessee for rent which the latter had been called upon to pay in consequence of the default of the second assignee, and that the words "subject to the payment of rent," etc., are words of qualification, and not words of contract.

In *Walker* v. *Physick*, 5 Barr, 193, it was held, in an opinion delivered by Chief Justice GIBSON, that the assignment of land, on which a perpetual rent has been reserved, declared in the *habendum* to be "under and subject to the payment of the said rent as the same shall accrue forever," does not create any liability by the assignee to indemnify his assignor for payments of rent accruing after the assignee has assigned over, which were compelled under the personal covenant in the original ground-rent deed,—and this whether the assignment be by deed poll or indenture.

The particular question now under consideration seems never to have been passed upon, directly, by this court, but the decisions in cases more or less analogous have been in consonance with the law as held in the cases we have cited. In *Comstock* v. *Hitt*, 37 Ill. 542, it was held that taking a deed for premises "subject to" the terms of a title bond, and without any express promise to pay the notes for purchase money mentioned therein, did not subject the grantee to the payment of such notes. It was there said (p. 549): "Taking a deed 'subject to an outstanding mortgage' creates no personal liability on the grantee to pay off the incumbrance unless he has specially agreed so to do or the amount of the mortgage has been deducted from the purchase price." *Hammer* v. *Johnson*, 44 Ill. 192, is to like effect; and so, also, is *Fowler* v. *Fay*, 62 id. 375. And the later case of *Dean* v. *Walker*, 107 Ill. 540, recognizes the same rule of law; but in the deed there in question was this provision: "which said two

trust deeds, and the indebtedness thereby secured, are hereby assumed, to be paid by the said party of the second part,"—and this, of course, was held to be an express promise by the grantee to pay the indebtedness, he having accepted the deed with a knowledge of its contents.

Several cases are cited and relied upon by appellees. To the more important of these we will make brief reference. In *Wilson* v. *Marlow*, 66 Ill. 385, there was a contract under seal and an assignment of a patent right, and the plaintiff was to receive five per cent on the net profits of the business of manufacturing, etc., and it was held that this amounted to an implied covenant that the business should be carried on if it could be made sufficiently profitable to justify its prosecution. We are unable to see that this decision is applicable to the case at bar. We find nothing in the averments of the declaration that shows that it was the intention of the Abbey company and of appellant that the latter should not have the power to make a second assignment of the lease, and that appellant, and appellant alone, was to operate the mine for the residue of the term.

In *Steward* v. *Wolveridge*, 9 Bing. 60, (23 E. C. L. 262,) and 2 Moore & Scott, 83, it was held by the Court of Common Pleas that an assignee who takes from a lessee leasehold premises by indenture, "subject to the rent reserved in the lease," is liable in covenant to the lessee for rent which the lessee has been called on by the lessor to pay after the assignee has assigned over. But it largely detracts from the authority of that decision that it was afterwards unanimously reversed in the Exchequer Chamber, on the ground the words "subject to," etc., were merely words of qualification and not of contract. (3 Moore & Scott, 561, *supra*.) And it also detracts from its weight that the decision is largely based on *Burnett* v. *Lynch*, 5 B. & C. 589, in which the breaches occurred during the time that the defendant was assignee of the term.

*Port* v. *Jackson*, 17 Johns. 239, is not an authority in point, for there was in that case a positive and express covenant on the part of the assignee to pay the rent as it became due to the lessor.

In *Campbell* v. *Shrum*, 3 Watts, 60, it was held that the purchase of a tract of land by agreement under seal, "subject to the payment of the purchase money and interest" due to a third person, is a covenant by the vendee to pay such purchase money and interest, upon which an action may be maintained in the name of the vendor for the use of him to whom it is due. The case seems to be in conflict with the rule as announced by this court in *Comstock* v. *Hitt, supra, Hammer* v. *Johnson, supra, Fowler* v. *Fay, supra,* and *Dean* v. *Walker, supra.* Besides this, the decision that the words used created a covenant, according to the statement of the same court in *Walker* v. *Physick, supra,* turned upon the fact that the instrument in which they were employed was an indenture, whereas, both from the statement in the declaration in the case at bar that the words "subject to the agreement," etc., were in "its deed," (*i. e.,* the deed of the lessee,) as well as from the rule that the declaration must be taken most strongly against the party whose pleading it is, it appears the deed of August 11, 1886, here pleaded, was a deed poll.

There are several considerations that lead us to the conclusion that the words "subject to the agreement," etc., used in the deed of August 11, 1886, do not import a covenant on the part of the assignee to personally pay all rents or royalties that may accrue during the term: First, the weight of authority is otherwise; second, the rule deducible from the decisions of this court in analogous cases is otherwise; third, as has been suggested in some of the cases, it is the duty of a party who intends by a deed to bind another by a covenant in a former formal instrument, to insert such covenant in the deed in such distinct and intelligible terms as that the party to be bound cannot be deceived, and not call upon the courts

to infer such a covenant from equivocal words, which were probably understood by one party in a sense different from that sought to be ascribed to them by the other; fourth, the assignee always takes the estate *cum onere*,— that is, he takes and holds it subject to the agreements agreed to be performed by the lessee, and it is difficult to perceive why, upon sound legal principle, the mere expression of this legal implication should create a personal contractual obligation which the legal implication itself would not create; fifth, it is the public policy of this State that the transmissibility of property should be free and unfettered, and to hold, from mere inference and in the absence of an express and plain covenant, that the assignee of a lease and his heirs will be personally liable for the payment of reserved rents which may accrue perhaps hundreds of years after such assignee has sold and assigned the lease to a third person, would tend to make leasehold estates unsalable and tend to prevent the transfer of them to others.

A further contention of appellees is based upon the averment in the declaration that the grantor in the deed of August 11, 1886, covenanted that the property "was free from all other and prior incumbrances except those above specifically mentioned." The claim is, that this exception can be held to refer only to the "agreements in the lease to be performed by the lessee." It is a sufficient answer to this claim that the entire deed is not set out in *hæc verba* in the declaration, and that there is no averment therein that no incumbrances other than "the agreements of the lessee" are specifically mentioned in the deed. The presumptions in this regard must be against the pleader. Besides this, as between the lessee and his assignee the covenants in the lease constitute no incumbrance whatever. The agreement in the lease to pay rent is an incident of the leasehold estate that was assigned;—one of the elements of the estate itself. The doctrine is, that nothing which constitutes a part of

the estate, or which, as between the parties, is to be regarded as an incident to which the estate is subject, can be deemed an incumbrance. *Dunkles* v. *Wilton Railroad Co.* 4 Foster, 489; 2 Devlin on Deeds, sec. 906.

But let us assume that "the agreements to be performed by the lessee" are the "incumbrances specifically mentioned." An assignment of a leasehold estate which warrants and defends the assignee against the performance of the agreements of the lease would indeed be a curiosity in the way of a legal instrument. The averments of this declaration, however, show that the Abbey Coal and Mining Company did not execute such an instrument, but that by its deed it simply warranted against "incumbrances" other than such "agreements." The absence of a warranty against such "agreements," in legal effect, merely left the assigned property, in respect to said "agreements," in its normal condition, and subject, in the hands of the assignee, to the performance of such "agreements,"—in other words, there was no change, in this regard, either in the rights of the parties to the deed or in the *status* of the property which is the subject of the deed. If the words "subject to the agreements therein mentioned to be performed by said lessee" do not impose a personal liability upon the assignee, then it is impossible that the words used in the deed that simply exclude "the agreements of the lessee" contained in the deed from the operation and effect of the covenants of the deed, and leave such "agreements" *in statu quo,* can work such result.

It follows from the views we have expressed that the judgments of the circuit and Appellate Courts are erroneous. They are reversed. The cause is remanded to the circuit court for further proceedings not inconsistent with this opinion.                    *Reversed and remanded.*

Mr. Justice Phillips, dissenting.